on behalf of Mr. Aguilar-Balbuena, and I would like to reserve two minutes for rebuttal. That's perfectly fine. Thank you. May it please the Court, Counsel, there are two issues in this case, mainly whether the district court erred in finding that Mr. Aguilar-Balbuena's prior district court, prior Illinois conviction was a crime of violence, and whether he erred in enhancing Mr. Aguilar's sentence by 16 levels. And certainly the second issue is whether Mr. Aguilar can even bring this before this Court, because there was a waiver of appeal in the plea agreement that he signed. That would almost seem to be the first issue. Correct. So we do have to get to that before we get to the issue of the crime of violence determination. And we would propose, Your Honors, that our position is that Mr. Aguilar-Balbuena did not waive his right to appeal because the waiver was not enforceable. And we're basing this position on the circumstances of the case and the circumstances surrounding the plea agreement. First, Mr. Aguilar is the defendant. Roberts, you would agree that the defendant could waive his right to challenge the way in which the guideline calculations are determined, correct? Correct. And he can't. So what went wrong here? Well, there's a number of things that went wrong. First of all, in this case, the plea colloquy, for starters, the plea colloquy, which is the tool that I believe we use to ensure that these things don't go wrong and that we ensure that there is a relinquishment of a known right. This was this tool was not used in this case. Mr. Aguilar-Balbuena was not asked at the time of the change of plea whether he knew how his sentence was going to be determined or whether he relinquished the right to appeal, how that sentence would be determined. Well, the first point, does the district court have to ask the defendant? No, but it can be. Do you understand how your guideline sentence is going to be calculated? Well, that's part of knowing whether it's a knowing and voluntary waiver, because if the person is not asked and then later on, as in this case, submits a letter to the court and says, I am reserving my right to appeal how my sentence is going to be determined, then it would be helpful to have the magistrate judge ask the defendant, do you know how your sentence is going to be determined and do you waive that right? Assuming it doesn't fall on that for the moment, assuming that doesn't work. Assuming that doesn't work. Let's say he's got a plea agreement, he's got a plea waiver, he's got a waiver of a right to appeal, so you said something else went wrong to it. Well, the other the second thing that went, the second issue why this, he can bring this appeal to this court, is because if we follow the logic of the government, which says that we have to look at the contract, at the plea agreement and at the enforceable waiver, the waiver indicates that he is waiving his right to appeal if he is sentenced within the parameters of the plea agreement. Okay. And depending on how you read parameters, he was sentenced within the parameters of the plea agreement, was he not? If you read the contract or the plea agreement. If one says, in effect, you're waiving your right to appeal, the district court's mucking around with the points and the factors and all that, which is what usually gets waived on appeal, or appeal, assuming that, then let's say the district court bowled up in calculating it. But isn't that what you waive when you waive your right to appeal? District court foul-ups. To put it, that's putting it awfully bluntly, but that's kind of what it is, generally. If you're not waiving that, you're not waiving anything. There's no waiver. Well, there's a – there's, Your Honor, if you're saying, okay, he waives how the district court is determining the sentence, if I understand you correctly. If you're saying, well, he waived how the district court is going to determine your sentence, then if that's – if you're taking that strict reading of the waiver in that plea agreement, then you have to look at the plea agreement itself and note that within the plea agreement, Mr. Aguilar's signature says that if it's A, you get B, and if it's B, you get C, you get D, and blah, blah, blah. But it also says, in this particular agreement, it says right before Mr. Aguilar's I have been convicted of a residential burglary, comma, an aggravated felony. And then on page 4 of the plea agreement, there's a section that says, if the defendant has an aggravated felony, then he will be sentenced to 8 to 14 months for a criminal history category 2. So if we're going to say, well, that's not really exactly accurate, because if you look at 1326, it's all aggravated felonies. Then you go into the guidelines, and the guidelines has different levels for different kinds of aggravated felonies. I believe one of Mr. Aguilar Balbuena's in this particular plea agreement, it encompassed four levels. It had 36 levels. And so if we're looking at the plea agreement on a strict contract basis, then he did not waive his right to appeal because he was not sentenced pursuant to the plea agreement. Okay. Now, wait a moment. If it's a crime of violence or not, it's an aggravated felony. We all know that. That's fine. Either way, it's an aggravated felony. He, in the district court, didn't he forfeit any claim that it was not a crime of violence? Didn't he? He knew quite well what the parameters were. In fact, he filed papers about that. And then so did his lawyer. And then he sent a letter and said, well, it's a crime of violence. Isn't that true? It is. And the way it occurred was that he sent a letter days before his sentencing, actually probably quite a bit of time before his sentence, perhaps a month, saying, I am not waiving. I waive all else, but I'm not waiving this, the determination of how you determine my sentence on this particular issue. The district court judge sends him back. He says, I concede, I'm conceding the burglary of the dwelling is a crime of violence. That lawyer at sentencing then says, you know, he filed that thing, and I just had a long conversation with him after that, and this is what he wants to do. That's what he wants to do then. And I do understand that. However, that's – I would ask the Court to look at the circumstances under those – under which those letters were filed. First, he files his letter asserting his right to appeal the determination of the sentence, and then he gets a letter back from the district court saying, you know, this is – this will be stricken and admonishing him not to file anything else. His lawyer – and, by the way, in that same letter, it says – His lawyer then takes the thing they struck and puts it into a points and authorities and files it with the court and makes the objection really almost the same language. And then prior to that, his lawyer – the client does say, I'm doing this because I don't think my lawyer is going to assist me in any manner. Then he shows up to the – then he shows up to the sentencing, and at the sentencing, the judge tells him, you are going to be sentenced as if you had a crime of violence, and that – that will be that, essentially. So I – if there's anything – if there isn't anything further, I'd like to reserve my two minutes. Thank you. Thank you, Your Honor. Thank you. Thank you. Thank you. Please record my name is Bruce Fergus, Assistant United States Attorney on behalf of the government in this case. The two issues, or two primary arguments which have been raised by the defense have been definitively rejected by this Court. First of all, as far as the requirement of some kind of detailed colloquy about the plea waiver specifically, in Michelin in 34F3rd, this Court said you don't need that. As long as there is an appropriate Rule 11 change of plea which talks about the overall waivers, it doesn't require specific discussion of the contents of an appeal waiver.  Particularly whereas here the other way around. If the defendant is going to waive his right to appeal in a plea agreement, at least you have the right to appeal. Do you understand that in the plea agreement you're giving up that right? Well, what Michelin says is that as long as that's in the plea agreement as it was here and specifically laid out, and the defendant says I've gone over that plea agreement with my attorney, I understand all the provisions, the contents of the plea agreement, I understand all the provisions in the change of pleas. Well, look, the magistrate judge fouled up. We know that. Okay? I'm sorry? The magistrate judge did not do the proper Rule 11 colloquy. We know that. Maybe it's okay, maybe it goes by all right, that's okay, but the point is he was supposed to and he didn't, correct? It would have improved the record, but, again, I don't know. He was supposed to do it, correct, under the rule? You don't want to conceit that. Shall I get out the rule and read the section? Would that help? Well, as construed by Michelin, it seems not to be necessary to in particular address at least the kind of detail of the defendant's case. My question was generally based on my understanding of the rule, which is basically you have to tell the defendant, advise the defendant, you understand you have a right to appeal the sentence or the conviction, and the plea agreement provides that you're giving up that right. Yes. It may be correct that you don't have to get into the details, that you're giving up your right to challenge the way in which the district court applied sentencing guideline X, Y, and Z. Correct. But I think Judge Fernandez has the rule, so. Shall I read the rule, or are you just, do you agree that the rule says something like, during this address, the court must inform the defendant of and determine the defendant understands the terms of any plea agreement provision waiving the right of appeal. Is that, that seems like he, the district judge should have done that, right? Yes. Let's take the next issue. But that doesn't necessarily mean that the change of plea clause was voluntary. It doesn't necessarily mean it has to be reversed, not necessarily. Let's take the next one. Okay. But the basic problem here is that what the defendant is trying to do is precisely what this Court said in Bollinger and in other cases is not permissible, which is, as they put it, to repackage substantive challenges going to the voluntariness of the plea as going to the voluntariness of the plea. And they said that's unacceptable. That's an end run around the waiver, because basically you thereby eviscerate the whole concept of waiver. Basically, the defendant makes a bargain for the certainty of a particular range of sentence within which he was sentenced here. He agrees to give up all potential errors, and that's essentially what happened. So the range is 6 to 87 months. That's a rather broad range that this 11C1C plea agreement set out, then, according to the government's position. That's correct, which is significantly less than the guideline range would have been, and significantly less, obviously, than the 20 years statutory max, which is really what is concerned about illegal pleas that was potentially applicable to this case. So what we're talking about is a man who says, OK, under Nguyen, under Bollinger, I'm going to make an agreement that if you sentence me within these various ranges, which he was, then I will give up the potential that there may be some error in the way that that is arrived at. And so if this court is going to come to some kind of a different analysis or understanding of how waivers work, I would suggest that it's going to be contrary to this whole range of Ninth Circuit precedent about how this has been done. Bollinger specifically says, in fact, the language is almost identical to the argument that's being made here, that you just don't do that. You can't turn it on its head and say, oops, I'm saying that there was an error in the way that you computed this, and so somehow that takes me outside of the agreed-upon range, and therefore it's invalid. Let's assume for a moment that we get to the heart of his appeal. Yeah. We could still affirm. The conviction, certainly, yes. The sentence. I'm, to be candid, uncertain about that. Okay. Why are you so uncertain about whether or not we can affirm? There does appear to be a separate definitional statute in Illinois law, which was not brought to the attention of the district court, which may or may not modify the meaning of dwelling for the purpose of the burglary statute in the way that Grisell said was inappropriate. I don't think that you have to get there. If you did, in fact, I think you shouldn't get there because of the waiver. But if it were to happen at all, the only remedy would be a remand on an open record because we only did a categorical analysis, not me, but the government here. I noticed in your red brief that you didn't attempt to argue a modified approach. Because that had not been done by the district court. In the blue brief, they said the two documents that were, or three documents that were available didn't show that this was a. Well, those were simply provided to illustrate or to show the nature of the conviction. But we don't have, for example, and potentially there may be, a change of plea transcript, which would shed considerably light on this. But Judge Brewer specifically said, I'm finding this categorically and didn't attempt to do a modified. And in your view, he did not forfeit this by his communications to the district court that said, well, this is a crime of violence, after he had filed documents that said, no, it's not a crime of violence because you haven't done the categorical thing correctly. And then his attorney filed the same sort of thing, same thing, really. And then at sentencing, they sort of withdrew from that. So what I'm saying is you don't believe that would be the case. It seems like he was personally taking the case into his hands and saying this. But again, if there is a doubt about the precise meaning of dwelling under Illinois law, what was he, in fact, admitting to? Was it simply rephrasing what he had put into the plea agreement, which may or may not have been accurate or not? But again, I think that's the case. But does his admission account for anything here, in this case, where the judge indicated that he wasn't at all, depending upon that?  He did not need that information in order to make his decision? Again, he was doing basically a categorical analysis and not looking at anything outside of it. And that's why he was represented by counsel at the time he sent that letter, correct? Yes, he was. But he did it on his own. And as was mentioned at the sentencing hearing, the counsel indicated, hey, we had talked about all this. You know, I had received his pro se objection. I basically incorporated that into my appropriate counsel-filed objection. And then he turns around and makes this admission, for whatever it's worth. But the admission was not made through counsel, correct? It was not. It was personal. It was a letter directly to the court. Well, by the way, what's his status today? He is out of custody and has been, actually, since 2010. He removed? I believe that he was. So that also is a problem. Basically, we are in the kind of situation that was addressed by Plancarti-Alvarez, that if you have to resentence somebody but he's outside the country, then the mechanism is actually to affirm the sentence with the understanding that if he ever shows up and is, again, subject to the jurisdiction of the district court within the time that the supervised release continues, then a motion can be made to vacate the sentence and resentence. We don't know, in fact, that he's out of the country, though. That's my understanding, but I couldn't swear to it. I can submit documentation if the Court would like. But, again, you only have to get to that if you find that the waiver was invalid, which under this Court's precedent, it was valid. Thank you. Thank you. I appreciate the government's candor in saying that, in fact, that the this was an overbroad statute by the definition of dwelling. But to get back to the certainty of the particular range, as the Judge Sutter indicated, this range was 6 to 87 months, and it was split up in different categories. So if you are reading the plea agreement, even as a lawyer, it is difficult to understand. Much more as a layperson who does not speak English, who has a sixth-grade education and has done fieldwork most of his life, and then not to have it addressed by the magistrate judge, makes it very difficult to find that, in fact, any waiver was knowingly and voluntarily made or knowingly made. Are you asserting that it was ambiguous, that the plea agreement was ambiguous, then? Yes, because it was very difficult to determine how he was going to be sentenced. Other than looking at it and saying, comma, I have an aggravated felony, and then looking at the paragraph on page 4 and saying, if you have an aggravated felony, your sentence will be 8 to 14 months, other than looking at those two little sentences, there's no way to really determine how it is that the sentence is going to be determined. There is a lot of legalese, a lot of case law, a lot of legal terms. For example, crime of violence appears in that plea. And we can see here how difficult it's been to determine what crime of violence is, and throughout the cases from the Ninth Circuit and the Supreme Court. So I would submit that it was very difficult for to decipher it from the plea agreement, and then not to have it addressed in the Rule 11 colloquy makes it that much more agreed to. Could you just confirm, is your client out of the country, or do you know? I do not know. I was appointed, I believe, subsequent to his release from custody. Okay. So we don't really know what his status is, whether he's here or out of the country. I would not be able to inform the Court. Okay. Thank you. Thank you, counsel. We appreciate your arguments. The matter is submitted.
judges: Settle, Fernandez, Paez